**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| **THE VENOR GROUP** | _____ | : | **CIVIL ACTION** |
| | | : | |
| **v.** | | : | **NO. 07-2079** |
| | | : | |
| **ISIS PHARMACEUTICALS** | | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                        **March   18, 2008**


        Plaintiff The Venor Group brings this action against Defendant Isis Pharmaceuticals.

Now before the Court is Defendant's Motion to Dismiss the Amended Complaint.  For the

reasons that follow, the Motion will be granted.


**I.  BACKGROUND**

        Accepting as true the allegations of the Amended Complaint, the relevant facts are as

follows: Plaintiff is an employment referral agency with its principal place of business in

Pennsylvania.  See Am. Compl. ¶ 1.  Defendant is a pharmaceutical company with its principal

place of business in California.  Id. ¶ 2.  On May 20, 2004, Defendant contracted with Plaintiff to

conduct a search for and identify a senior-level physician to replace its outgoing Executive Vice

President and Chief Medical Officer.  Id. ¶ 3.  The parties signed a Referral Agreement

("Agreement"), which provided that Defendant would pay a fee to Plaintiff if it referred a

successful candidate to Defendant.  See Agreement 1, attached to Compl. at Ex. A.  The

Agreement, which was drafted by Defendant, expressly provided that "[r]eferrals will be held

active for six months (6 months) from the date of receipt.  No fee will be owed or due . . . for any

-1-

referral hired after said six-month period." Id.

On August 11, 2004, Plaintiff submitted the name of Jeffrey M. Jonas, M.D. ("Jonas") as a candidate for the position of Executive Vice President and Chief Medical Officer.  Am. Compl. ¶ 4.  On December 13, 2004, Defendant notified Plaintiff by telephone and e-mail that it intended to hire Jonas and that reference checks were required.  Id. ¶ 5.  Plaintiff then performed a check of all references for Jonas and submitted the final reference on January 4, 2005.  Id. ¶ 6.  On January 11, 2005, Defendant "released news that it planned to eliminate 40% of its jobs" and informed Plaintiff that it "would have to put Dr. Jonas on hold for a while due to the situation of the company."  Id. ¶ 8.

Over two years later, on January 22, 2007, Defendant issued a press release stating that Jonas would be joining the company as Executive Vice President starting February 1, 2007.  Id. ¶ 14.  Defendant refused to pay Plaintiff a fee after hiring Jonas.  Id. ¶ 16.  Plaintiff alleges that based on an expected $350,000 starting base salary, it is entitled to a referral fee of $87,500 (25% of Jonas's expected starting rate of pay).  Id. ¶ 17.  On April 9, 2007, Plaintiff filed the instant action in the Philadelphia Court of Common Pleas, and Defendant removed to this Court on May 22, 2007.

On June 18, 2007, Defendant moved to dismiss the original Complaint, arguing that the unambiguous terms of the contract precluded recovery because Jonas was hired after the Agreement expired.[1]  Plaintiff responded by arguing (a) that the Agreement was ambiguous and (b) that even if the Agreement were unambiguous, Defendant was equitably estopped from

---

[1]     Based on the referral date of August 11, 2004, the Agreement expired by its own terms on approximately February 11, 2005.

relying on the six-month limitation.  On November 9, 2007, the Court found that the Agreement

was unambiguous, thus negating any breach of contract claim, but permitted Plaintiff to amend

its Complaint to include any facts relevant to its equitable estoppel theory.[2]  On November 19,

2007, Plaintiff filed an Amended Complaint.  Defendant filed the instant Motion on December 7,

2007.


## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), this Court is required "to accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom, and view them in the light most favorable to

the non-moving party."  Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  In

deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its

attachments without reference to other parts of the record."  Jordan v. Fox, Rothschild, O'Brien

& Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  "To survive a motion to dismiss, a civil plaintiff

must allege facts that 'raise a right to relief above the speculative level on the assumption that the

allegations in the complaint are true (even if doubtful in fact).'"  Victaulic Co. v. Tieman, 499

---

[2]        Specifically, the Court afforded Plaintiff the opportunity to allege how it
detrimentally relied on Defendant's representations.  Although Federal Rule of Civil Procedure 8
does not require a plaintiff to provide detailed factual allegations in support of its claims, the
complaint "must provide the defendant with 'fair notice of what the plaintiff's claim is and the
grounds upon which it rests.'"  Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 346 (2005) (citation
omitted).  Because the original Complaint contained no facts that would support its estoppel
theory, the Court permitted Plaintiff to amend its pleading in order to give Defendant the
required fair notice.  See Brock & Co. v. Kings Row Assocs., 2004 U.S. Dist. LEXIS 23333, at
*12-13 (E.D. Pa. Nov. 17, 2004) (granting a plaintiff leave to amend its complaint where the
complaint alleged "no facts" to support an estoppel claim).

F.3d 227, 234 (3d Cir. 2007) (citations omitted in original) (quoting <u>Bell Atl. Corp. v. Twombly</u>,

127 S. Ct. 1955, 1965 (2007)).


## III.  ANALYSIS

In the Amended Complaint, Plaintiff includes three new allegations: (1) Defendant's

January 11, 2005 representations "induced the Plaintiff to continue with its efforts to secure Dr.

Jonas' employment with [Defendant]," Am. Compl. ¶ 11; (2) Based on Defendant's

representations, "Plaintiff continued with its efforts to secure Dr. Jonas' employment . . . with an

understanding that it would be compensated pursuant to the terms and conditions of the aforesaid

contract when the hiring of Dr. Jonas was effectuated," <u>id.</u> ¶ 12; and (3) Plaintiff "justifiably

relied on the Defendants' [sic] inducement in its continuing efforts to secure the employment of

Dr. Jonas with Defendant," <u>id.</u> ¶ 13.

Even construing the facts in the light most favorable to Plaintiff, the Court finds that

Plaintiff—a sophisticated employment placement business—was not justified in relying on an

informal conversation containing vague representations that contradicted the precise terms of the

unambiguous written Agreement.  <u>See, e.g.</u>, <u>Massaro Ltd. P'ship</u>, 161 F. App'x at 188 (rejecting

an estoppel claim because reliance on an alleged statement that board approval of a rental

agreement was a "mere formality" was unjustified where the written agreement "stated without

any qualification that the lease was subject to board approval"); <u>Marmer v. Saloom Furniture</u>

<u>Co.</u>, 1995 U.S. Dist. LEXIS 13733, at *18-20 (E.D. Pa. Sept. 12, 1995) (rejecting an estoppel

claim where an independent sales representative unjustifiably relied on a manager's informal,

vague statement that the company "had no intention of firing the reps" and that all

representatives were "part of [the company's] five year plan"); Thatcher's Drug Store v. Consol. Supermarkets, 636 A.2d 156, 160-61 (Pa. 1994) (rejecting an estoppel claim by "a business entity operating in the commercial setting" because it unjustifiably relied on "an indefinitely worded promise uttered in an informal conversation" that contradicted the written contract).[3]

Plaintiff allegedly relied on an oral statement with no time limitation and no guarantee that "things [would] clear[] up with the company," and argues that this entitles it to recover on an Agreement that expired nearly two years before Jonas was hired.  If Plaintiff believed that Defendant agreed to extend the Agreement, it easily could have reduced such an extension to writing.  See Kreutzer, 747 A.2d at 362 ("[P]ersons of ordinary prudence will modify a writing with another writing in any matter of importance."); Thatcher's Drug Store, 636 A.2d at 160-61 ("In view of the relationship between the parties and the nature and duration of the promise, any agreement not to compete should have been formalized. Proceeding in such a manner would have memorialized the occasion and reduced the possibility that the terms of the agreement would be misunderstood.").  However, it failed to do so and cannot now rely on equitable estoppel to escape the unambiguous time limitations of the written Agreement.  Accordingly, Plaintiff fails to assert grounds for equitable estoppel, and the Amended Complaint will be dismissed.

---

[3]     See, e.g., Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (Pa. 1983) ("The two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement.").

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE VENOR GROUP | _____ : | CIVIL ACTION |
| | : | |
| v. | : | NO. 07-2079 |
| | : | |
| ISIS PHARMACEUTICALS | : | |

**ORDER**

**AND NOW**, this    18th        day of March, 2008, upon consideration of Defendant's

Motion to Dismiss the Amended Complaint (docket no. 9), Plaintiff's Response thereto (docket

no. 10), and Defendant's Reply (docket no. 12), and for the reasons stated in the accompanying

Memorandum, it is **ORDERED** that the Motion is **GRANTED**, and the Clerk of the Court shall

mark this case **CLOSED**.


                                        **BY THE COURT:**


                                         **/s/ Bruce W. Kauffman**
                                         **BRUCE W. KAUFFMAN,  J.**